IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| **CASEY DILLON WOOD,** )  )  **Petitioner,** )  ) v. )  ) **JOEL ZIEGLER, Warden,** )  )  **Respondent.** ) | **Civil Action No. 5:11-0450** |

**PROPOSED FINDINGS AND RECOMMENDATION**

On June 27, 2011, Petitioner, acting *pro se*, filed his Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody.[1] (Document No. 1.) Petitioner argues that he successfully completed RDAP, but the BOP is improperly denying him a sentence reduction pursuant to 18 U.S.C. § 3621. (Document No. 2.) Petitioner explains that the BOP is denying him a sentence reduction because his sentence[2] was enhanced for creating a substantial risk to human life pursuant to U.S.S.G. § 2D1.1(B)(6)(B).[3] (Id., pp. 9 - 12.) First, Petitioner argues that his enhancement did not qualify as the "conviction" for purposes of Section 550.55(b). (Id., pp. 9 - 10, 26 - 27, 29 - 30 .) Petitioner further states that his enhancement did not qualify as (1) an offense "that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives;" or (2) an offense which "by its nature or conduct, presents a serious potential risk of physical force

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] On April 27, 2006, Petitioner pled guilty in the Western District of North Carolina to conspiracy to manufacture and possess with the intent to distribute at least 50 grams of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1).

[3] This Guideline is now designated as U.S.S.G. § 2D1.1(b)(10)(C)(ii).

against the person or property of another." (Id., pp. 10 - 12.) Second, Petitioner claims the "denial of a sentence reduction in this case violates the Equal Protection Clause of the Constitution." (Id., pp. 12 - 14.) Petitioner alleges that the BOP has violated his right to Equal Protection because "two other individuals within the Fourth Circuit received a sentence reduction for completion of the RDAP despite the fact that they had been convicted of manufacturing methamphetamine and had been assessed a sentence enhancement under U.S.S.G. § 2D1.1(B)(6)(B). (Id., p. 13.) Therefore, Petitioner requests that the Court order the BOP "to reduce Petitioner's sentence by twelve months." (Id., p. 14.)

As Exhibits, Petitioner attaches the following: (1) A copy of Petitioner's "Judgment in a Criminal Case" as filed in the United States District Court for the Western District of North Carolina in Case No. 1:06-cr-0005-11 (Id., pp. 16 - 18); (2) A copy of Petitioner's "Request for § 3621(e) Offense Review" dated July 22, 2010 (Id., pp. 22 - 23.); (3) A copy of Petitioner's "Request for § 3621(e) Offense Review" dated August 18, 2010 (Id., pp. 24 - 25.); (4) A copy of Petitioner's "Request for Administrative Remedy" dated August 31, 2010 (Id., pp. 26 - 27.); (5) A copy of Warden D.J. Harmon's Response dated October 1, 2010, denying Petitioner's administrative remedy (Id., p. 28.); (6) A copy of Petitioner's "Regional Administrative Remedy Appeal" dated October 6, 2010 (Id., pp. 29 - 30.); (7) A copy of Regional Director C. Eichenlaub's Response dated February 14, 2011 (Id., p. 31.); (8) A copy of Petitioner's "Central Office Administrative Remedy Appeal" dated February 26, 2011 (Id., pp. 32 - 33.); (9) A copy of Administrator Harrell Watts' Response dated May 10, 2011 (Id., p. 34.); and (10) A copy of Petitioner's "Certificate of Completion" of the 500 Hour Residential Drug Abuse Program (Id., p. 35.).

## **DISCUSSION**

**1.     Petitioner's Provisional Eligibility for Early Release Under Section 3621(e).**

Petitioner asserts that the BOP erred by considering his sentence enhancement for creating a substantial risk to human life in determining whether he qualified for early release under the RDAP. (Document Nos. 1 and 2.)

Title 18 U.S.C. § 3621(b), authorizes the BOP to implement drug abuse treatment programs for its prisoners: "The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). To effectuate this mandate, the BOP is required to ensure that all "eligible prisoners" "with a substance abuse problem have the opportunity to participate in appropriate substance abuse treatment . . . [and the BOP shall] provide residential substance abuse treatment." 18 U.S.C. § 3621(e)(1). As an incentive for successful completion of the RDAP, prisoners with non-violent offenses may receive a reduced sentence up to one year upon completion of the program as follows:

> **(2) Incentive for prisoner's successful completion of treatment program. - -**
>
> **(A) Generally.** – Any prisoner who, in the judgment of the Director of the Bureau of Prisons, has successfully completed a program of residential substance abuse treatment provided under paragraph (1) of this subsection, shall remain in the custody of the Bureau under such conditions as the Bureau deems appropriate. If the conditions of confinement are different from those the prisoner would have experienced absent the successful completion of the treatment, the Bureau shall periodically test the prisoner for substance abuse and discontinue such condition on determining that substance abuse has recurred.
>
> **(B) Period of custody.** - - The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B). Section 3621, however, does not set forth the criteria for eligibility for early release. Rather, the statute vests the BOP with discretionary authority to determine when an inmate's sentence may be reduced. Thus, the BOP in its discretionary authority established criteria

3

for determining eligibility for early release. 28 C.F.R. § 550.55[4] provides in part that inmates whose current felony offense is a felony that "involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (*including any explosive material or explosive device*)" or "by its nature or conduct, presents a serious potential risk of physical force against the person or property of another" are ineligible for early release consideration. 28 C.F.R. § 550.55(b)(5)(ii) and

---

[4] Title 28, C.F.R. § 550.55 sets forth in part, the following eligibility requirements:

(a) Eligibility. Inmates may be eligible for early release by a period not to exceed twelve months if they:
    (1) Were sentenced to a term of imprisonment under either:
        (I) 18 U.S.C. Chapter 227, Subchapter D for a nonviolent offense; or
        (ii) D.C. Code § 24-403.01 for a nonviolent offense, meaning an offense other than those included within the definition of "crime of violence" in D.C. Code § 23-1331(4); and
    (2) Successfully complete a RDAP, as described in § 550.53, during their current commitment.

(b) Inmates not eligible for early release. As an exercise of the Director's discretion, the following categories of inmates are not eligible for early release:
    \* \* \*
    (5) Inmates who have a current felony conviction for:
    \* \* \*
    (ii) An offense that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device);
    (iii) An offense that, by its nature or conduct, presents a serious potential risk of physical force against the person or property of another; or
    \* \* \*

(c) Early release time-frame.
    (1) Inmates so approved may receive early release up to twelve months prior to the expiration of the term of incarceration, except as provided in paragraphs (c)(2) and (3) of this section;
    (2) Under the Director's discretion allowed by 18 U.S.C. 3621(e), we may limit the time-frame of early release based upon the length of sentence imposed by the Court;
    (3) If inmates cannot fulfill their community-based treatment obligations by the presumptive release date, we may adjust provisional release date by the least amount of time necessary to allow inmates to fulfill their treatment obligations.

(iii)(emphasis added). The BOP explains this eligibility criteria in Program Statement [P.S.] 5331.02 stating that an inmate "shall be precluded from receiving certain Bureau program benefits" when the inmate's current offense is a felony that "[i]nvolved the carrying, possession, or use of a firearm or other dangerous weapon or explosive." P.S. 5162.05 § 4 identifies offenses that at the director's discretion shall preclude an inmate's receiving certain Bureau Program benefits. Section 4(b) of P.S. 5162.05 provides that a person convicted of a drug offense under 21 U.S.C. § 841 and 846, who has received a sentencing enhancement for possession of a dangerous weapon has been convicted of an "offense that will preclude the inmate from receiving certain Bureau program benefits." Petitioner was convicted of conspiracy to manufacture and possess with the intent to distribute methamphetamine and his sentenced was enhanced pursuant to U.S.S.G. § 2D1.1(B)(6)(B) for creating a substantial risk to human life. "The dangers of methamphetamine laboratories to human life are well-documented." United States v. Howell, 201 F.Appx. 948, 949 (4th Cir. 2006), cert. denied, 548 U.S. 1236, 127 S.Ct. 1317, 167 L.Ed.2d 127 (2007). Thus, the BOP did not err in concluding that the manufacturing of methamphetamine posed a cognizable danger. See Walther v. Bauknecht, 155 Fed.Appx 463 (11th Cir. 2005)(finding no error in the BOP's determination that a federal prisoner convicted of conspiracy to manufacture methamphetamine was not eligible for a sentence reduction because his offense involved the possession of anhydrous ammonia, which posed cognizable danger to the public.)

Although Petitioner contends that the BOP did not have authority to classify his drug conviction as a "crime of violence" rendering him ineligible for early release consideration pursuant to 18 U.S.C. § 3621(e), the express language of the statute clearly vests the BOP with broad discretion to make such a determination. However, because Congress failed to define " a nonviolent offense" for purposes of 18 U.S.C. § 3621(e)(2)(B), the Court must determine whether 28 C.F.R. §

550.55, as applied through Program Statement 5162.05 and 5331.02, represents a reasonable interpretation of the statute.

In reviewing an agency's interpretation of a statute, it is well settled that the Court must first determine "whether Congress has spoken directly to the precise question at issue." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If Congress' intent is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. If Congress' intent is not clear however, then the statute is ambiguous and the question for the Court becomes "whether the agency's answer is based on a permissible construction of the statute." Id. at 842, 104 S.Ct. at 2782. The Court must accord "substantial deference" to the agency's reasonable interpretation of a statute Congress has charged it with administering, unless the interpretation is "arbitrary, capricious, or manifestly contrary to the statute." Id. at 844-45, 104 S.Ct. at 2782-83. When the agency's regulatory action is not subject to the Administrative Procedures Act [APA], 5 U.S.C. § 553, however, deference due under Chevron is inapplicable and the agency's interpretation is only "entitled to some deference. . . [so long as] it is a 'permissible construction of the statute.'" See Reno v. Koray, 515 U.S. 50, 61, 115 S.Ct. 2021, 2027, 132 L.Ed.2d 46 (1995); see also, Fuller v. Moore, 1997 WL 791681 (4th Cir. Dec. 29, 1997)(BOP program statements are not subject to the rigors of the APA and therefore, are only entitled "some deference."). Although the Supreme Court did not explain the difference between "substantial deference" and "some deference," the Eleventh Circuit explained the meaning of "some deference" as follows:

> We do not think it is obvious, however, that "some deference" means there are occasions in which we should uphold the interpretation contained in a BOP program statement, even though it is different from the one we would reach if we were deciding the matter *de novo*. If that were not true, "some deference" would be the same as "no deference," and that would render the Supreme Court's word in Koray

meaningless.

Cook v. Wiley, 208 F.3d 1314, 1319-20 (11th Cir. 2000). In Christensen v. Harris County, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), in declining to defer to an agency's interpretation contained in an opinion letter, the Supreme Court stated:

> Interpretations such as those in opinion letters -- like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law -- do not warrant Chevron-style deference. Instead, interpretations contained in formats such as opinion letters are "entitled to respect" under our decision in Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but only to the extent that those interpretations have the 'power to persuade.'

Christensen, 529 U.S. at 587, 120 S.Ct. at 1662 (citations omitted); see also United States v. Mead Corp., 533 U.S. 218, 235, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)(new policy is entitled only "some deference" or "respect proportional to 'its power to persuade.'"). The BOP's interpretation as expressed in 28 C.F.R. § 550.55 is subject to the notice and comment provisions of the APA and therefore, the undersigned finds that the interpretation is entitled substantial deference. Program Statements 5162.05 and 5331.02, however, are not subject to the APA and therefore, are entitled to respect to the extent that it has power to persuade. Under this framework, the undersigned finds that the BOP's interpretations of Section 3621(e) and P.S. 5162.05 and 5331.02 are "permissible constructions of the statute" and are in accord with its plain meaning and legislative intent.

Section 3621(e) states that the sentence of an inmate "convicted of a non-violent offense . . . *may* be reduced by the Bureau of Prisons." 18 U.S.C. § 3621(e)(2)(B)(emphasis added). The legislative history indicates that part of the reason in passing Section 3621, was ultimately to reduce the recidivism rate of substance abusers by providing an incentive for inmates to obtain drug treatment. See Residential Substance Abuse Treatment in Federal Prisons, P.L. 103-322, Violent Crime Control and Law Enforcement Act of 1994, H.R. Rep. No. 103-320, at 2 (1993). The "non-

violent offense" language, however, was inserted to ensure that inmates likely to commit violent crimes do not receive early release. Id. Other than alluding to the BOP's discretionary authority in awarding early release, the legislative history does not provide any further insight into whether the BOP could categorically exclude certain inmates from early release. Accordingly, the undersigned must determine under the second step of the Chevron analysis whether the BOP's interpretation of Section 3621(e) is a reasonable and permissible construction of the statute.

      The BOP's interpretation of Section 3621(e) and establishment of eligibility criteria is entitled substantial deference. The undersigned finds that in view of the statute's complete silence on eligibility, the BOP's interpretation is not inconsistent with the language of the statute as a whole. The statute provides that the BOP may reduce the sentence of an inmate convicted of a nonviolent offense. The BOP has construed this language to mean that inmates who receive a sentence enhancement for creating a substantial risk to human life in connection with the commission of a drug offense should not be rewarded with a one year early release. See 28 C.F.R. § 550.55, P.S. 5162.05, P.S. 5331.02. In Lopez v. Davis, 531 U.S. 230, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001), the United States Supreme Court determined that the BOP had not abused its discretion in promulgating Section 550.58 (1997 regulation) because the BOP "reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggest his readiness to resort to life-endangering violence." Lopez v. Davis, 531 U.S. 230, 244, 121 S.Ct. 714, 724, 148 L.Ed.2d 635 (2001)("[T]he Bureau may categorically exclude prisoners based on their preconviction conduct . . . ."). The undersigned notes that effective March 16, 2009, 28 C.F.R. § 550.58 was modified slightly and redesigned as 28 C.F.R. § 550.55. Section 550.55 is essentially identical to Section 550.58, but contains a detailed rationale as to why inmates who have been convicted of offenses listed in Section

550.55(b)(5)(I) - (iv) are ineligible for consideration for early release.[5] See Hicks v. Federal Bureau of Prisons, 603 F.Supp.2d 835 (D.S.C. 2009)(When applying Section 550.55, Petitioner's APA challenge fails because the new regulation merely clarifies the BOP's position), aff'd, 358 Fed.Appx. 393 (4th Cir. 2009), cert. denied, ___ U.S. ___, 130 S.Ct. 3442, 177 L.Ed.2d 347 (2010); also see Holland v. Federal Bureau of Prisons, 2009 WL 2872835 (D.S.C. Sept. 2, 2009)(slip copy)(finding that petitioner's petition should be dismissed because (1) his claim "based on *Arrington's* conclusion that § 550.58 violated the APA fails because the regulation satisfies the Fourth Circuit's requirement that the agency's rationale be 'reasonably discernable,'" and (2) "the newly adopted § 550.55 contains a detailed explanation"). The undersigned, therefore, finds that the BOP's interpretation of Section 3621(e) is reasonable and permissible. Accordingly, Petitioner's Section 2241 Application challenging the BOP's early release eligibility criteria must be dismissed.

**2.    No Liberty Interest in RDAP Placement or to Early Release:**

Petitioner appears to allege that his constitutional rights were violated because he was entitled to participate in RDAP and receive a reduced sentence for his participation in the program. (Document No. 1, pp. 12 - 14.) The Fifth Amendment protects against deprivations of life, liberty, or property by the federal government. See U.S. Const. amend. V. In order to prevail on a due process claim, a petitioner must show that the government has interfered with a protected liberty or property interest and that the procedures that led to the deprivation were constitutionally sufficient. Thus, petitioner must first demonstrate that he had a protected liberty interest. The fact of conviction and imprisonment implies the inmate's transfer of his liberty to prison officials, who in their broad

---

[5] In the BOP's revised rationale, it explains that inmates who have been convicted of offenses listed in Section 550.55(b)(5)(i) - (iv), have displayed a readiness to endanger the public or another's life.

9

discretion, administer his sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Id. (emphasis added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, to establish a deprivation of a liberty interest with respect to RDAP, Petitioner must show either (1) that he has a legitimate entitlement to admission in RDAP or in early release or (2) that the denial thereof creates an atypical and significant hardship on him in relation to the ordinary incidents of prison life. See Sandin, 515 U.S. at 483-84, 115 S.Ct. at 2299-2300.

Federal prisoners have no constitutional or inherent right to participate in rehabilitative programs while incarcerated. See Moody v. Daggett, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous

loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process."). Likewise, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz, 442 U.S. at 7, 99 S.Ct. at 2104; see also, Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)("[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty."). Title 18, U.S.C. § 3621(e), however, vests the BOP with broad discretionary authority to reduce, by up to one year, the sentence of a federal prisoner convicted of a nonviolent offense, upon the successful completion of a substance abuse treatment program. 18 U.S.C. § 3621(e); see also Lopez, 531 U.S. at 232, 121 S.Ct. at 718. The language of this statute which provides that a prisoner's sentence "may be reduced by the [BOP]," is clearly permissive; the statute does not *mandate* that the BOP reduce a prisoner's sentence upon completion of the substance abuse treatment program.[6] See Lopez, 531 U.S. at 240, 121 S.Ct. at 721(Affirming that the BOP "may exclude inmates whether categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, in a manner that is not arbitrary or capricious." (Citations omitted.)); Downey v. Crabtree, 100 F.3d 662, 670 (9th Cir. 1996)(Finding that 18 U.S.C. § 3621(e)(2)(B) "reflects unequivocal congressional intent to leave to the Bureau final decisions regarding whether to grant eligible inmates a sentence reduction following successful

---

[6] It should be noted here that the BOP is required to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). This obligatory command, however, does not extend to the granting of the incentive-based reduction of a prisoner's sentence for the successful completion of the substance abuse program.

completion of a drug-treatment program."). Thus, as to substance abuse treatment programs, the BOP has wide discretion in determining both whether an inmate enters such a program in the first instance and whether to grant or deny eligible inmates a sentence reduction under Section 3621(e). See Pelissero, 170 F.3d at 444. Courts have consistently held that inmates who successfully complete substance abuse treatment programs do not have a liberty interest in the provisional early release date and suffer no deprivation of due process rights as a result of the rescission of their consideration for early release. See Zacher v. Tippy, 202 F.3d 1039, 1041 (8th Cir. 2000)("The language of section 3621(e)(2)(B) is permissive, stating that the Bureau 'may' grant early release, but not guaranteeing eligible inmates early release."); Wottlin v. Fleming, 136 F.3d 1032, 1035 (5th Cir. 1998).

Petitioner does not possess a constitutionally protected expectation interest in receiving a sentence reduction. Such a subjective expectation does not arise to the level of a constitutional claim. See Mallette v. Arlington County Employees' Supplemental Ret. Sys. II, 91 F.3d 630, 635 (4th Cir. 1996)("[A] mere expectation of a benefit – even if that expectation is supported by consistent government practice – is not sufficient to create an interest protected by procedural due process. Instead, the statute at issue must create an entitlement to the benefit before procedural due process rights are triggered."). Neither Section 3621(e), the BOP's Program Statement (P.S. 5162.05), nor the Code of Federal Regulations (28 C.F.R. § 550.55), contain explicit mandatory language or standards limiting the BOP's discretion, which may have given rise to a protected liberty interest in early release.[7] See Kentucky Dept. of Corr. v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 1909-10, 104 L.Ed.2d 506 (1989)(Regulations must contain "explicitly mandatory language" to create a liberty

---

[7] Even upon completion of RDAP, the statute governing the substance abuse treatment program gives discretion to the BOP to determine whether a prisoner should be granted *any* reduction in sentence. *See* 18 U.S.C. § 3621(e)(2)(B).

interest.). Accordingly, Petitioner does not possess a statutorily protected expectation interest in early release.

### 3. No Violation of Equal Protection.

Plaintiff alleges that the BOP has violated his right to Equal Protection because "two other individuals within the Fourth Circuit received a sentence reduction for completion of the RDAP despite the fact that they had been convicted of manufacturing methamphetamine and had been assessed a sentence enhancement under U.S.S.G. § 2D1.1(B)(6)(B)." (Document No. 2, p. 13.) The relevant equal protection cases provide a basic three-step analysis to determine whether an inmate's right to equal protection has been violated. First, the inmate must produce evidence to show that he was treated differently than other similarly situated inmates. See Durso v. Rowe, 579 F.2d 1365, 1371 (7th Cir. 1978). Second, the inmate must show that he was intentionally singled out for harsher treatment. See Brandon v. District of Columbia Bd. of Parole (I), 734 F.2d 56, 60 (D.C. Cir. 1984); Stringer v. Rowe, 616 F.2d 993, 998 (7th Cir. 1980). Third, if the inmate was purposefully singled out, the analysis can take one of two paths. The first path is taken if the inmate can show that the prison's motivation in effecting its differential treatment implicates a suspect classification or a fundamental right. If this is established, the Court must strictly scrutinize the prison's actions. See O'Bar v. Pinion, 953 F.2d 74, 81-82. The prison must show that the classification is narrowly tailored to a compelling governmental interest. Id. If the prison's reason for the differential treatment does not implicate a suspect class or a fundamental right, the analysis takes the second path. See Brandon (I), 734 F.2d at 60, Brandon v. District of Columbia Bd. of Parole (II), 823 F.2d 644, 650 (D.C. Cir. 1987). On this path, the differential treatment is subject only to rational basis review. See O'Bar, 953 F.2d at 81-82. A rational basis review requires that the government's decision to treat similarly situated individuals differently bear some rational relationship to a legitimate State purpose. See id. at 81; Brandon (I),

734 F.2d at 60; Brandon (II), 823 F.2d at 650.

The undersigned finds that Plaintiff fails to properly allege that he was treated differently than another similar-situated inmate. Plaintiff's conclusory allegation that he was treated differently than two similarly situated inmates in the Fourth Circuit is insufficient. In his Affidavit, Petitioner appears to acknowledge that he is being treated similar to other inmates at FCI Beckley. (Document No. 2, pp. 19 - 21.) Petitioner explains that he was initially approved for early release, but Inmate Ward was denied early release "based on his enhancement for creating a substantial risk of harm to human life in connection with the charge for manufacturing methamphetamine." (Id., p. 20.) Petitioner states that Inmate Ward filed a Complaint with BOP staff and Petitioner's eligibility for a sentence reduction was re-evaluated. (Id.) Petitioner states that "upon re-evaluation Ms. Tiffany Phillips, Assistant General Counsel at DSCC, determined that I was not eligible for the sentence reduction under section 3621." (Id., p. 21.) Thus, Petitioner is being treated similar to Inmate Ward. Furthermore, Plaintiff cannot show that he was intentionally singled out for harsher treatment. Accordingly, the undersigned finds that Plaintiff has failed to state a claim for denial of equal protection of the law.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Petitioner's Application under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody (Document Nos. 1 and 2.) and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule

6(d) and 72(b), Federal Rules of Civil Procedure, the Petitioner shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*.

Date: August 20, 2012.

R. Clarke VanDervort
United States Magistrate Judge